**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X

In Re:

JACQUETTA A. GIFFORD

                        Debtor.
-------------------------------------------------------X

STATE OF NEW JERSEY, DEPARTMENT
OF LABOR & WORKFORCE DIVISION OF
UNEMPLOYMENT AND DISABILITY INSURANCE,

                Plaintiff,
     v.

JACQUETTA A. GIFFORD,

               Defendant.
-------------------------------------------------------X

FILED
JEANNE A. NAUGHTON, CLERK
SEP 19 2018
U.S. BANKRUPTCY COURT
TRENTON, NJ
BY_____DEPUTY

Chapter 7

Case No. 17-21499 (MBK)

Adv. No. 17-1544 (MBK)

APPEARANCES:

Jacquetta A. Gifford, Debtor
513 Greenbrook Rd.
North Plainfield NJ 07063-1759
*Pro Se*

Gurbir S. Grewal,
Attorney General of New Jersey
Gregory L. Van Dyk,
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 119
Trenton, NJ 08625
*Attorney for State of New Jersey,
N.J. Department of Labor & Workforce
Development, Division of Unemployment
and Disability Insurance*

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

I. **INTRODUCTION**

In this adversary proceeding, the State of New Jersey, Department of Labor & Workforce Development, Division of Unemployment and Disability Insurance, (referred to herein as "Plaintiff" or "the Division") seeks a determination that debts for unemployment benefit overpayments, penalties, and statutory interest owed by Jacquetta A. Gifford (the "Debtor" or "Defendant") are nondischargeable under § 523(a)(2)(A) and § 523(a)(7) of the Bankruptcy Code.[1] The overpayments at issue occurred over the course of approximately six months and resulted from the Debtor's failure to report accurately her part-time employment and wages from TD Bank, when she certified her eligibility for unemployment benefits with the Division. After the overpayments were discovered and the Defendant was given notice of an investigation into the wage-benefit conflict, as well as opportunity to respond, the Division issued a Determination and Demand for Refund of Unemployment Benefits and Disqualification Because of Willful Misrepresentation ("Demand for Repayment"), in violation of N.J. STAT. ANN. 43:21-16, demanding repayment of $19,306, including a fine of $3,947 and statutory interest. Thereafter, the Division's Determination was upheld on appeal.

The Division now seeks a ruling that these debts are nondischargeable in the Debtor's chapter 7 case. Specifically, the Division asserts that the Debtor's failure to accurately report her part-time earnings constitutes intentional fraud and renders the debts resulting from the overpayments nondischargeable under § 523(a)(2)(A). The Division also seeks a determination that the statutory penalties assessed against the Debtor are nondischargeable under § 523(a)(7).

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive. Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ——."

2

## II. JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This nondischargeable debt action is a statutory core proceeding and this court has constitutional authority to enter a final order. 28 U.S.C. § 157(b)(2)(I). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The following constitutes the Court's finding of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[2]

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

At the trial held in this adversary proceeding on September 12, 2018, the Court heard testimony from the Debtor and one witness called by the Division: Mr. Umesh Naik, an investigator with the New Jersey Division of Unemployment and Disability Insurance, Bureau of Benefit Payment Control. Mr. Naik, with twelve years of experience in his position, testified with regard to the workings, practices and procedures of the Division, including the collection of data and maintenance of all records. He testified credibly as to the following material facts:

1. Mr. Naik authenticated the booklet "Unemployment Insurance, Your Rights and Responsibilities" (the "booklet") for the year 2013, identified at Exhibit A and further testified that all unemployment insurance claimants are given this booklet, and that at pages 9-10 of the booklet, Exhibit A, P-16 - P-17, claimants are told of the requirements to remain eligible for benefits.

2. Mr. Naik confirmed that at pages 14-15 of the booklet, Exhibit A, P-21 - P-22, part-time work during the claim is fully explained to the claimant. The booklet makes it clear that the Debtor was required to report all earnings and that she was permitted to receive up to 20% of her weekly benefit rate without any reduction in the unemployment check. Moreover, he explained that the Debtor was permitted to receive up to 120% of her weekly benefit rate before forfeiting the entire unemployment amount.

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

3. Mr. Naik further testified that the Debtor under-reported her income for every single week she collected benefits and received $15,788 in unemployment benefits while earning over $12,000 in under-reported earnings for the same 39 weeks period. Exhibit E, P-81 - P-83. The Debtor earned weekly between $287 and $387, for the majority of the weeks in question and had she reported her outside employment correctly, she may have been eligible to receive some unemployment benefits if she were not employed for more than 80% of the normal hours. However, he noted that the Debtor under-reported her earnings for every one of the weeks in question and therefore was ineligible for any of the benefits received.

4. Mr. Naik further testified that the Debtor claimed her benefits each time by internet web certification, except for the initial week of March 23, 2013, and that in the booklet, she was advised of the procedure for claiming benefits on the internet. Pertinently, the claimant is instructed to claim her benefits every two weeks. The witness further explained that the Debtor slightly reduced her reported earnings every time she entered her earnings, thus increasing the benefits that the Division provided. Exhibit E, P-81 - P-83. This continued for the first 18 weeks and thereafter, the Debtor entered only $50 - $80 per week as her earnings when she earned in excess of $300 per week for the remainder of her claim. This resulted in the Debtor's receipt of benefits that reached $471 per week, a marked increase from the initial week where she had reported close to her correct earnings, resulting in a benefit of only $263.

5. Mr. Naik also advised the Court that the overpayment was not discovered because the Debtor came forward and called it to the attention of the Division, but rather by a "wage-benefit conflict" check, i.e., a spot match of wages reported by an employer against unemployment benefits paid.

The Debtor also testified credibly, and her inability to demonstrate any meaningful error in the Division's recordation of her self-reported earnings is understandable, given the absence of any digital or paper receipts provided as part of the Division's use of the Local Office Online Payment System ("LOOPS"). However, the Debtor's lack of testimonial or documentary evidence leaves the Division's case unchallenged. Apart from questioning whether the Division should have continued paying her the higher benefits after having identified a wage-benefit conflict, and challenging the accuracy of the part-time income figures appearing in the LOOPS, the Debtor failed to offer any additional evidence or explanation for the discrepancies. The Court also admitted fourteen exhibits into evidence. The testimony and exhibits provided information about the general policies and procedures utilized by the Division, as well as the specific facts pertaining

4

to the Debtor's application for benefits, gross income data as reported by TD Bank and the Division's ultimate determination that she was overpaid, together with the decision of the Appeal Tribunal.

The Debtor in this case does not dispute that she was overpaid unemployment benefits because she previously had failed to disclose accurately her part-time employment income with TD Bank when she certified her eligibility for benefits to the Division. When the Division discovered the overpayments, it conducted an administrative investigation and thereafter issued its report and subsequent Demand for Repayment. This adversary proceeding requires the Court to determine whether, and to what extent, the obligation imposed by the prior administrative Demand for Repayment, subsequently filed in the New Jersey Superior Court as a judgment, DJ-171803-15, is dischargeable in the Debtor's chapter 7 case. Specifically, the Division asserts that the debts for repayment of the benefits and statutory interest are nondischargeable because the overpaid benefits were obtained by the Debtor through false pretenses, a false representation, or actual fraud under § 523(a)(2)(A). The Division further contends that the statutory penalties assessed against the Debtor are nondischargeable under § 523(a)(7) as penalties "payable to and for the benefit of a governmental unit" that are "not compensation of actual pecuniary loss."

Section 523 of the Bankruptcy Code provides that:

a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . .

    (2) for money, property, services, . . . or credit, to the extent obtained by—

        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). The terms "false pretenses," "false representation," and "actual fraud" are not explicitly defined in the Code; nevertheless, the Supreme Court has dictated that "[t]hey

5

are common-law terms, and . . . imply elements that the common law has defined them to include." *Field v. Mans*, 516 U.S. 59, 69, 116 S. Ct. 437, 443, 133 L. Ed. 2d 351 (1995). Among these three grounds for nondischargeability, courts in this circuit often distinguish between "false pretenses" and "false representation" based on whether the debtor's misrepresentation was implied—indicating "false pretense"—or express—indicating "false representation." *See, e.g., In re Williams*, No. 15-23287, 2018 WL 3344174, at *14 (Bankr. D.N.J. July 5, 2018) (collecting cases); *In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467; *In re Witmer*, 541 B.R. 769, 778 (Bankr. M.D. Pa. 2015). The third cause of action under § 523(a)(2)(A), "actual fraud," is defined by the elements of common law fraud. *See Field v. Mans*, 516 U.S. at 443-444; *In re Williams*, No. 15-23287, 2018 WL 3344174, at *14.

Courts have noted that "[a]lthough the terms 'false pretenses,' 'false representation,' and 'actual fraud' refer to different concepts, they are closely related and each requires a plaintiff to demonstrate proof of false or deceptive conduct, fraudulent intent, and justifiable reliance." *In re Altieri*, No. 11-12819, 2012 WL 3595298, at *2 (Bankr. D.N.J. Aug. 20, 2012) (internal quotations and citations omitted); *see also In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *22. Accordingly, courts generally require that a movant prove some variation of the following elements in order to establish fraud of any type under § 523(a)(2)(A):

(1) the debtor obtained money, property or services through a material misrepresentation;

(2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth;

(3) the debtor intended to deceive the creditor;

(4) the creditor justifiably relied on the debtor's false representations; and

(5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.[3]

### A. Material Misrepresentations.

There is no dispute that the Debtor made misrepresentations to the Division when she certified her eligibility for unemployment benefits, but failed to properly and adequately disclose her part-time wages from TD Bank. During the time period at issue in this adversary proceeding, the Debtor completed internet certifications for 39 benefit weeks. The Debtor under-reported her income for every single week she collected benefits for this period. In doing so, she received $15,788 in unemployment benefits while earning over $12,000 in under-reported earnings during this 39 week stretch.

### B. Justifiable Reliance.

To prevail on its § 523(a)(2)(A) cause of action, the Division must also establish that it relied on the certifications made by the Debtor through the internet/telephone system and that its reliance was justified. *See Field v. Mans*, 516 U.S. at 74–75, (holding that a creditor's reliance under § 523(a)(2)(A) need only be subjectively "justified" and not objectively "reasonable"); *First Horizon Home Loan Corp. v. Apostle (In re Apostle)*, 467 B.R. 433, 443 (Bankr. W. D. Mich.

---

[3] This Court notes that there does not exist in the Third Circuit a singular, universally-used test for proving a claim under § 523(a)(2)(A). However, a close inspection of existing case law reveals that all tests require a movant to fulfill the same basic requirements, and the primary differences between the tests are the number of elements which define the test for establishing a claim. *Compare In re Bocchino*, 794 F.3d 376, 381 (3d Cir. 2015) (five elements) *with In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *22 (Bankr. D.N.J. Jan. 31, 2018) (six elements) *and In re Softcheck*, No. 08-23844, 2009 WL 4747527, at *7 (Bankr. D.N.J. Dec. 4, 2009) (ten elements) *and In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), *aff'd*, 106 F.3d 52 (3d Cir. 1997), *aff'd sub nom. Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (five elements). Because the relevant case law agrees as to what is substantively required to prove a claim under § 523(a)(2)(A), the variation in the number of elements does not have any meaningful impact on the analysis in this case, or on the legal analyses performed by other courts that have addressed a § 523(a)(2)(A) claim in this Circuit. Rather, the difference in the number of elements appears to be merely organizational. *Compare In re Bocchino*, 794 F.3d at 381 (including the requirements that the debtor "obtained money, property or services" and that there was "a material misrepresentation" in the same element) *with In re Chung-Hwan Kim*, No. 12-30363, 2018 WL 671467, at *22 (breaking the requirements that the debtor "obtained money, property or services" and that there was a "material representation" into two separate elements).

2012) (holding that the justifiable reliance standard "requires proof that a plaintiff actually relied upon the defendant's false representations and that such reliance was justified under the circumstances.") (citations omitted). Under the justifiable reliance standard, a creditor, such as the Division, is not required to make an independent investigation into the truth or falsity of every representation. *See Willens v. Bones (In re Bones)*, 395 B.R. 407, 432 (Bankr. E. D. Mich. 2008). However, as the United States Supreme Court noted in *Field v. Mans,* "[j]ustifiability is not without some limits." *Field v. Mans*, 516 U.S. at 71, 116 S. Ct. at 444. The creditor is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (citing Restatement (Second) of Torts § 541, cmt. a (1976)). This rule applies "only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by use of his senses." *Id.* Justification, therefore, is based upon "an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *Id.* (citing W. PROSSER, LAW OF TORTS § 108, at 717 (4th ed. 1971)); *see also* DAN B. DOBBS ET AL., DOBBS' LAW OF TORTS § 673 (2d ed. 2016) (noting that the "strength of the 'notice' to the plaintiff that investigation may be needed" is dependent on a number of factors including "the obscurity or obviousness of the contradiction in the defendant's statements" and the "relationship of the parties").

Other courts that have considered the issue have concluded that it is justifiable for state unemployment agencies to rely on "weekly certifications to determine an applicant's eligibility for benefits over specific periods of time." *See Ohio Dept. of Job & Family Servs. v. Yuppa (In re Yuppa)*, 2013 WL 4854479 (Bankr. S. D. Ohio June 12, 2013) (unpublished opinion) (citing *State of Colorado ex rel. Central Collection Serv. v. O'Brien (In re O'Brien)*, 110 B.R. 27, 32–33 (Bankr. D. Colo. 1990) (holding, in a decision pre-dating *Field v. Mans*, that the state unemployment

8

agency satisfied a reasonable reliance standard). Discussing the Colorado unemployment system, the *O'Brien* court explained:

> The process relies on the honest claimant to carry out the intent of the legislature. If we were to require more, that is, an immediate investigation to ensure only truly unemployed persons receive benefits, the system would bog down in delayed payments with the overwhelming burden of unemployment falling on those who deserve it the least, the honest and misfortunate unemployed worker and his family. We cannot see where Colorado is required to do more than satisfy the statutory mandate.

*In re O'Brien*, 110 B.R. at 33. As did the court in *O'Brien*, this Court views the Division's efforts and due diligence, in relying upon the Debtor's certifications, as more than adequate in the circumstances.

### C. Causation.

Proximate causation, i.e., loss or damage to the creditor "as a proximate result of" the debtor's misrepresentation, is a final element that must be proved in order to establish nondischargeability under § 523(a)(2)(A). *United States v. Spicer*, 57 F.3d 1152, 1157 (D.C. Cir. 1995); *In re Santos*, 304 B.R. 639, 669 (Bankr. D.N.J. 2004). The Division has established that its reliance on the Debtor's inaccurate certifications caused it to overpay the Debtor benefits. Had the Debtor accurately reported her income from TD Bank, her weekly benefits would have been reduced in accordance with the statutory formula. The Debtor's failure to accurately report her employment status and income resulted in the overpayment of benefits from the Division to the Debtor.

### D. Intent to Deceive and Making False Representation Knowingly or with Gross Recklessness as to Truth.

As the Division has successfully established the misrepresentation, reliance, and causation elements of its § 523(a)(2)(A) cause of action, the dispositive issues on its fraud

9

claim is whether the Debtor, in failing to accurately disclose her employment income, intended to deceive the Division and did so knowingly or with a gross recklessness as to the truth. The Debtor argues that she had no intent to deceive the Division and subjectively believed that she was reporting her income correctly. While she has no recollection of reporting the earnings as reflected in the LOOPS system, she offers no other evidence or explanation for the significant discrepancies. The preponderance of evidence presented at trial, confirming the volume and repetition of substantial reporting inaccuracies, compel the conclusion that the Debtor did intend to deceive the Division when she misrepresented her part-time income through her internet certifications.

It has been held previously that "a debtor's intention—or lack thereof—must be determined by the totality of the circumstances." *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 282 (6th Cir. 1998). In this case, the Debtor certified for unemployment benefits through the internet for 39 weeks. The repeated and on-going nature of the Debtor's misrepresentations suggest that she intended to mislead the Agency. *See In re Yuppa*, 2013 WL 4854479 *at *4* (holding that "[r]epeated misrepresentations of employment status when applying for benefits are sufficient to prove fraudulent intent") (citing *In re O'Brien*, 110 B.R. at 31–32; *Arizona Dept. of Economic Security v. Kaliff (In re Kaliff)*, 2 B.R. 465, 468 (Bankr. D. Ariz. 1979)).

The Division has the burden to demonstrate that at the time the Debtor made the misrepresentations, she knew that those representations were false, or that they were made with gross recklessness as to their truth. *In re Purington*, No. 11-11617, 2012 WL 1945510, at *11 (Bankr. D.N.J. May 30, 2012); *In re Cohen*, 191 B.R. 599, 605 (D.N.J. 1996). Where the knowledge element is based on recklessness, the conduct must exceed negligence and rise to the level of reckless disregard for truth. By reckless conduct, we refer to

"unreasonable conduct in disregard of a known or obvious risk from which it is highly probable that harm would follow." *Id.* (quoting *In re Woolley*, 145 B.R. 830, 834 (Bankr.E.D.Va.1991)).

> It is usually accompanied by a conscious indifference to the consequences. In contrast, negligence is characterized as mere thoughtlessness or inadvertence or simple inattention." Hence, "[w]here the knowledge element is based on recklessness, the conduct must exceed negligence and rise to the level of reckless disregard for truth.... Recklessness is usually determined by a pattern of conduct." Lastly, ... if the totality of the circumstances exhibit a debtor's reckless disregard of the truth, a finding of intent or knowledge cannot be overcome simply by an "unsupported assertion of honest intent.

*Id.* (citations omitted).

The repetitious and significant under-reporting of part-time earnings over a 39 week period reflects more than mere sloppiness or inattentiveness. Rather, it evidences, at the very least, an unacceptable recklessness in the Debtor's certifications and is sufficient to satisfy the knowledge element of § 523(a)(2)(A).

## IV.    CONCLUSION

For these reasons, the Court finds that the Debtor misrepresented her part-time employment earnings with the intent to deceive the Division. The repayment debt owed by the Debtor to the Division resulting from the overpayment of benefits, as of July 18, 2018, in the amount of $15,024 (consisting of $15,788.00 in overpayments, a fine of $3,947.00[4],

---

[4] The Division also argues that the $3,947.00 statutory penalties assessed against the Debtor due to her receipt of overpayments are nondischargeable under § 523(a)(7). The Court agrees. This penalty is excepted from discharge without the need for the Department to make application to the Court. 11 U.S.C. §523(c). It is a fine, penalty or forfeiture payable to and for the benefit of a governmental unit and not compensation for actual pecuniary loss. Notwithstanding, the Court also rules that the statutory penalties should also be excepted from discharge under § 523(a)(2)(A) as interpreted by the Supreme Court in *Cohen v. de la Cruz* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), which held that "all debts arising from fraud" are excepted from discharge; this includes any penalties imposed by the Division, even though the penalties may also be nondischargeable under § 523(a)(7)).

less $4,711.00 in credits) is nondischargeable under § 523(a)(2)(A). The Division is to submit a proposed form of judgment,

Dated: September 19, 2018

*/s/ Michael B. Kaplan*
Honorable Michael B. Kaplan
United States Bankruptcy Judge